## Federal Insurance Company v. Hiter.

(Decided May 19, 1915.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, No. 3).

1. Insurance—Automobile Insurance—Liability.—In a policy insuring the owner of an automobile "against loss or damage, if amounting to $25.00 or more on any single occasion by theft, robbery, or pilferage by any person or persons other than those in ·the em-ployment, service, or household of the insured" the company was liable for the diminution in value of a machine so stolen and driven to a distant state and abandoned, notwithstanding the further provision in the policy that "this company shall be liable only for the actual cost of repairing or, if necessary, replacing the parts damaged or destroyed." ·

2. Insurance—Construction of Policy.—If ambiguous or contradictory provisions appear in an insurance policy, or its provisions are sus-

ceptible of two interpretations, it will be given that interpreta-
tion which furnishes to the insured the protection for which he
has paid.

3.  Conversion—Conversion of Automobile.—Where an automobile is
loaned for a specific purpose to one, who at the time intends to
steal it, and he takes it beyond the place where he was supposed
to go and abandons the machine in a remote section of a distant
state in a badly damaged condition, and does not notify the owner
where the machine might be found, there is a conversion of the
machine just as if he had actually sold the same and appropriated
the proceeds.

BURNETT, BATSON & CARY for appellant.

EDWARD G. HILL for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

In August, 1913, appellee was engaged as an automobile dealer in the city of Louisville. He held a policy of insurance on a new Henderson Special Roadster which he had in his place of business, the policy being for $1,500.

For several weeks he had employed in his place of business a young man by the name of Yost, but business being dull he notified Yost a week in advance that on the next Saturday he would have to let him go, and when Saturday came he paid Yost off and terminated the employment at noon on that day. The same afternoon Yost represented to him that he desired to go to Indianapolis to procure other employment, and requested the loan of the new Henderson Roadster to make the trip, promising that he would return it either Sunday night or Monday morning following.

Appellee loaned him the car, Yost drove it to Indianapolis, there tried to sell it, then went on with it to the State of Missouri, where, some six or seven weeks later, it was found in a remote part of that State in a badly battered and damaged condition.

Appellee, when he discovered the whereabouts of the car, went to the State of Missouri, taking with him an expert machinist, recovered the car and returned it to Louisville at an expense of $130.44.

After the car was returned to Louisville the missing parts were supplied and all necessary repairs made at a cost of $339.44, and the car was thereafter sold for $750.

This is a suit to recover under the policy of insurance for the expense of recovering the car and bringing it to Louisville, for the cost of repairs thereon after it reached Louisville, and for the diminution in value of the car by reason of the alleged theft thereof and the consequent damage.

The policy, after insuring the automobile against loss or damage by fire or exposure, or while being transported by land or water, or against general average or salvage charges, says: "* * * and also against loss or damage if amounting to $25.00 or more on any single occasion by theft, robbery, or pilferage by any person or persons other than those in the employment, service or household of the insured." It is also provided in another part of the policy that "in the event of loss or damage under this policy, this company shall be liable only for the actual cost of repairing, or, if necessary, replacing the parts damaged or destroyed."

The law and facts being submitted to the court, it was adjudged that the plaintiff recover the expense incurred in recovering the car and returning it to the city of Louisville, the cost of repairs thereon, and $750 diminution in the value thereof.

The finding of fact by the lower court was that at the time the automobile was borrowed by Yost he was not employed by the plaintiff; that Yost borrowed the same intending to convert it to his own use; that the $130.44 expense incurred was necessary in recovering and preserving the car; that it cost the plaintiff $339.78 to repair the car after its recovery, and this was necessary and reasonable expenditure; that the market value of the car at the time Yost borrowed it was $1,800, and was valued at $1,500 in the policy, and that immediately after it was repaired it was worth $750.

The uncontradicted evidence is that the contract of employment of Yost by appellee had been terminated before the car was borrowed, and the court could not have held under the evidence that Yost was at the time still an employe of appellee.

It is argued by appellant that in as much as under the express language of the policy, "this company shall be liable only for the actual cost of repairing or, if necessary, replacing the parts damaged or destroyed," there was no liability for the diminution in value of the machine. But to so hold would give no effect, whatsoever,

to the express language insuring "against loss or damage if amounting to $25.00 or more on any single occasion."

It is apparent that the language limiting the liability to the actual cost of repairing or replacing the damaged parts, in the light of the other language used, should not be interpreted as claimed by appellant. The car when it was loaned to Yost was a new car, and it had never been run more than one or two hundred miles, and was of the value of $1,800; when appellee recovered it, even after the expense of recovering it and the expense of repairing it, it was a second-hand car and only worth $750. The language used in the policy insuring against loss or damage, if amounting to $25.00 or more on any single occasion by the theft, robbery, or pilferage, is very broad and comprehensive and it cannot be maintained with any degree of reason that the diminution in value was not a part of the loss or damage insured against under the plain terms of the policy.

But if there was any doubt about this, and the two provisions of the policy quoted were construed to be in conflict with each other or susceptible of two interpretations, still, under the rule of construction adopted by this court, that interpretation would be given it which would fully protect the insured. If ambiguous or contradictory provisions appear in an insurance policy, or its different provisions are susceptible of two interpretations, it will be given that interpretation which would furnish to the insured that protection for which he has paid. Spring Garden Ins. Co. v. Imperial Tobacco Co. 132 Ky., 23; National Life and Accident Ins. Co. v. O'Brien's Executrix, 155 Ky., 502.

But it is argued by appellant that there was no actual conversion by Yost of appellee's property so that he was deprived of the ownership thereof; that because he did not actually sell the machine there was no conversion. But manifestly this argument is unsound; the machine was loaned to Yost for a specific purpose, and to go to a certain place; he went not only beyond that place, but he never did in fact return the machine, but abandoned it in a remote section of a distant state in a badly damaged condition, and did not even notify appellee where it might be found, and it was not in fact recovered for some six or seven weeks after it should have been returned. This was just as effectual a con-

version as if he had actually sold the machine and appro-priated the proceeds.

Appellant's argument, if followed to its logical end, would mean that there would have been no conversion even if Yost had retained possession of the machine for five years, just so he had not sold it. Manifestly this cannot be true.

Judgment affirmed.