Lewis H. KELLER and Ruth Keller, his wife, Plaintiffs-Appellants,

v.

Leroy REICH and Mildred Reich, his wife, Defendants-Respondents.

No. 12673.

Missouri Court of Appeals, Southern District, Division One.

Jan. 24, 1983.

Kenneth A. Wagoner, Moore, Brill & Wagoner, P.C., West Plains, for plaintiffs-appellants.

Harold L. Henry, Henry, Henry & Henry, P.C., West Plains, for defendants-respondents.

TITUS, Judge.

On June 16, 1972, plaintiffs and defendants entered into a contract for the sale of farmland wherein defendants, Leroy and Mildred Reich, agreed to convey a certain tract of land located in Howell County to the plaintiffs, Lewis and Ruth Keller. At that time the Kellers deposited $2,500 earnest money in an escrow account with Laurin Realty, Inc., the agent of the Reichs. In return the Reichs agreed to furnish an abstract of title to the Kellers as evidence that they owned a clear and marketable title on the land, and thus that they may convey a good and proper warranty deed. The Kellers were to have ten days to examine the abstract and inform the Reichs, in writing, of any defects found in the title. The contract states that if any defects were to appear the Reichs were to correct them, and that if such defects were not corrected within sixty days from written notice of their existence, the contract would be rendered null and void. On the other hand, if no defects were found, plaintiffs and defendants were to close the deal on July 17, 1972, with the Kellers tendering the $40,000 remaining on the balance and the Reichs conveying a warranty deed.

In July 1972, an attorney for a loan company discovered a defect in the Reichs' title in the form of a lis pendens having been filed against the property. Laurin Realty was informed of the defect, and they subsequently notified both plaintiffs and defendants. Norma Laurin, of Laurin Realty, testified that the Reichs agreed to have the defect cleared so that the sale could be closed. At that time the closing date was postponed, and there were no further communications among the parties until approximately five months later when the Reichs informed Laurin Realty that since they were unable to convey marketable title the contract was null and void, and thus Laurin should "give the people back their [earnest] money."

From July 1972 until July 1975, a period of three years, the Kellers contacted Laurin Realty "several times" to state that they were still interested in closing the sale and wanted to be kept informed of any developments. In July 1975, the defect in the title was cleared, and on July 25, 1975, Laurin Realty wrote to the Reichs requesting that the deal now be closed. The Reichs did not respond, and on October 23, 1975, the Kellers' attorney also wrote to the Reichs requesting the deal be closed. Again, the Reichs did not respond; this action was instituted for specific performance, and a lis pendens filed on the property in question.

Numerous attempts at serving the Reichs with process between 1975 and 1980 failed until May 12, 1980, when personal service was made in Tuscon, Arizona. And even though the Reichs knew in 1975 that the Kellers still wanted the property, they improved the property, took loans out against it, and even attempted to sell it. The matter was tried in November 1981 without a jury. The court entered judgment for the Reichs, finding that the Kellers failed to provide written notice of defects in title, failed to tender the purchase price on the date of closing, failed to contact the Reichs for more than three years, and failed to use diligence in seeking personal service on the Reichs. The court also found that improve-

ments had been made on the property, improving its value, along with inflation, by more than one hundred per cent, and that the Kellers were neither harmed by the nonperformance of the contract nor now able to perform the contract. This appeal ensued.

■■■ The plaintiffs' lone point on appeal challenges the decision of the lower court to deny specific performance. The lower court, they allege, erred in that plaintiffs have met all the requirements for specific performance, and are not guilty of any unexcused delay. In addition, they aver that defendants have waived any objections to any delay since defendants failed to rescind the contract. However, before a court may grant the equitable remedy of specific performance there must exist a valid contract between the parties to the action. *McKenna v. McKenna,* 607 S.W.2d 464, 467[9] (Mo.App.1980); *Taylor v. Taylor,* 367 S.W.2d 58, 61[1] (Mo.App.1963). In addition, specific performance will be refused where "a condition subsequent terminating the duty has occurred." *Landau v. St. Louis Public Service Company,* 364 Mo. 1134, 1140, 273 S.W.2d 255, 259[12] (banc 1954), 48 A.L.R.2d 1200, 1205. If a condition has made the contract null and void then there is nothing upon which to grant specific performance, for a court will not make a contract for the parties. *Biggs v. Moll,* 463 S.W.2d 881, 887[3] (Mo.1971).

■■■ The contract evidencing the agreement between the parties in this case states that:

"[i]f any of said defects so noted are not corrected within sixty (60) days after delivery of such objections then this contract shall be null and void and the earnest money deposited as aforesaid shall be returned to the Buyer and the abstract returned to the Seller."

Case law in Missouri holds that such provisions are not absolute provisions. Rather, they are "for the protection of the purchaser; he is not bound to accept the deed and pay the money unless the title is good, and yet, if he chooses to waive the defect and take the title cum onere, he may do so."

*Otto v. Young,* 227 Mo. 193, 205, 127 S.W. 9, 13–14 (1910). The provision may thus be exercised only by the buyer, for if the seller were allowed to use it there would be no contract at all, since the seller could void the contract at will by simply refusing to correct any defects while waiting sixty days for the contract to void itself.

Since there was a defect in the Reichs' title that would and did take more than sixty days to correct, the Kellers had two options: they could either waive the defect and take the property as it was, or they could do nothing and, by implication, void the contract upon the lapse of sixty days. There is not one shred of evidence tending to show that the Kellers tried to waive the defect in the Reichs' title. Rather, the Kellers admit that they were not willing to go ahead with the contract until the defect was removed. Therefore, the only other alternative is that the contract must have become null and void upon expiration of sixty days from the notice of the defect.

Just as this provision was intended to prevent sellers from voiding the contract by merely deciding not to correct a defect, it was also intended to bring a quick end to the dealings so that land and money are not tied up for years. Otherwise the buyer, too, could decide the contract was not a good deal for him and thus void it at any time after the defect was discovered and prior to conveyance. It would be a contract binding on the seller and not on the buyer, the seller bound to convey or respond in damages, the buyer not bound to do anything he does not wish. We hold that since the Kellers did not exercise their option to waive the defect in title the contract became null and void at the end of sixty days. Since there is no valid contract, there is nothing upon which to base an action for specific performance.

Judgment affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.